IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2021

## STATE OF TENNESSEE v. THOMAS EUGENE WILLIAMS

**Appeal from the Criminal Court for Knox County**
**No. 112942      Steven W. Sword, Judge**

_____

### No. E2021-00035-CCA-R3-CD

_____

The Defendant, Thomas Eugene Williams, appeals as of right from the Knox County Criminal Court's revocation of his probation and reinstatement of the remainder of his two-year sentence for failure to appear. Although the Defendant acknowledges that he violated the terms of his probationary sentence, he contends that the trial court abused its discretion by requiring him to serve the balance of his sentence in custody rather than ordering an alternative sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

J. Christian Stadler, III, Knoxville, Tennessee, for the appellant, Thomas Eugene Williams.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joe Welker, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### FACTUAL BACKGROUND

On May 1, 2018, the Knox County Grand Jury indicted the Defendant for possession with the intent to sell more than one-half ounce but not more than ten pounds of marijuana in a school zone, possession with the intent to deliver more than one-half ounce but not more than ten pounds of marijuana in a school zone, and possession of drug paraphernalia. See Tenn. Code Ann. § 39-17-432, -17-417, -17-425. Thereafter, he entered an April 3, 2020 guilty plea to one count of possession with the intent to sell more than one-half ounce but not more than ten pounds of marijuana, and the trial court imposed a two-year sentence. See Tenn. Code Ann. § 39-17-417. A "Probation Certificate" dated May 12, 2020,

indicated that the Defendant was placed on determinate release effective May 13, 2020. One of the enumerated conditions of release was to "obey the laws of the United States or any state[.]"

On September 11, 2020, a probation violation warrant was filed alleging that the Defendant had committed criminal acts on September 6, 2020. According to the warrant, the Defendant had been charged in Knox County case numbers 1370733, 1370734, 1370735, and 1370736 with the following offenses: "Aggravated Assault—Domestic"; "Casual Exchange, 2nd or Subsequent"; simple possession or casual exchange; and possession of unlawful drug paraphernalia, respectively.

At the December 10, 2020 probation revocation hearing, Christa Bowling testified that on September 5, 2020, she had been in a romantic relationship with the Defendant for three months. Ms. Bowling noted that the Defendant had accused her of cheating on him throughout the day. She and the Defendant were on the front porch of a home[1] on Cecil Avenue in Knoxville when the Defendant "ordered" Ms. Bowling to go to the unfinished attic above the garage. The Defendant told Ms. Bowling that she had "demons inside of [her]" and that they were "trying to get to him," and he brought her a Bible to read "while he got ready to go out." When asked whether this dynamic was normal in their relationship, Ms. Bowling said, "It wasn't until that day. Things were getting worse and that day was horrible." She described the Defendant's temperament that evening as "really volatile."

After checking to make sure Ms. Bowling was reading the Bible, the Defendant left. Ms. Bowling fell asleep, and at 1:30 a.m., the Defendant placed a video call to Ms. Bowling and woke her up. The Defendant "ordered" Ms. Bowling out of bed and told her to show him the room, the bed, and her body using her cell phone camera. He further instructed her to stand in the doorway until he arrived at the house. Ms. Bowling said that the Defendant screamed "at the top of his lungs" that she was "having people over there" and cheating on him. Ms. Bowling believed the Defendant was going to kill her and called 911 after hanging up the video call.

The Defendant returned to the house around 2:00 a.m., and Ms. Bowling walked down the front steps to meet him. The Defendant came from behind the house where he had parked, grabbed Ms. Bowling by the back of her shorts, and forced her upstairs onto a bed. The Defendant climbed on top of Ms. Bowling and said, "[S]o you want to f--- now, do you?" The Defendant proceeded to strangle Ms. Bowling; she testified that although she could not speak or breathe, she did not pass out or become dizzy. The police arrived shortly thereafter, and the Defendant stopped.

---

[1] It was unclear from the testimony whether Ms. Bowling and the Defendant rented or cohabitated in the house.

Ms. Bowling testified that after the incident, she had bruises on her neck and ear and a scratch on her neck. She stated that although the police took photographs of her injuries, they did not provide them to her. She did not receive medical treatment. Ms. Bowling denied knowing about any narcotics found inside the car.

Ms. Bowling testified that the Defendant never directly threatened to kill her, although she noted that she "just knew his history and what he had been with [her]." She acknowledged that she was not locked in the attic and that she never attempted to leave or call the police prior to the 911 call; however, she added that she was afraid because she knew the Defendant would return and that he "threatened [her] not to leave the attic or call anyone." She did not recall telling the police that she called 911 in response to a text message from the Defendant instead of a call.

The day after the incident, Ms. Bowling deleted the cell phone application with which the Defendant video called her, and she also deleted her text messages to and from the Defendant. She acknowledged that she had no record of the video call preceding the incident.

Knoxville Police Officer Michael Tucker responded to Ms. Bowling's domestic disturbance call on September 6, 2020. He saw the Defendant walk into an upstairs door above the garage, and as Officer Tucker and other officers approached the house, the Defendant emerged. The Defendant denied that a physical confrontation had occurred and stated to the officers that he drove a car to the house. Officer Tucker saw red marks and a scratch on Ms. Bowling. The officers passed a parked car walking to and from their police cruisers; on the driver's side floorboard, the officers saw in plain view a quantity of marijuana, a small quantity of heroin, and pills stamped with a "Batman logo." The Defendant's driver's license was also in the front driver's side floorboard. Officer Tucker could not recall whether he saw the Defendant near the car or whether the Defendant identified the car with the drugs as the one he drove. Officer Tucker could not remember the Defendant's demeanor or whether the victim also came outside.

The trial court found that Ms. Bowling was credible and that the Defendant committed aggravated assault involving strangulation. The court also found that given Officer Tucker's testimony that the Defendant's driver's license was found in the same location as the drugs, a preponderance of the evidence established that the Defendant engaged in criminal behavior. The court noted that the domestic violence was sufficient to revoke the Defendant's probation and ordered the reinstatement on the Defendant's two-year sentence. The Defendant timely appealed.

ANALYSIS

Although the Defendant acknowledges that he violated the terms of his probation, he contends that the trial court abused its discretion by fully revoking his probationary sentence instead of ordering an alternative sentence. The Defendant argues that the trial court failed to consider the purposes and principles of sentencing and that the court "never suggested that re-establishing the Defendant would not be the appropriate punishment" or made findings of facts relative to the "suitability of other alternative sentencing."

The State responds that the trial court properly exercised its discretion by ordering the Defendant to serve the balance of his sentence in confinement because the Defendant was not entitled to a second order of an alternative sentence. The State notes that the statutory purposes and principles of sentencing only apply to the original sentence and not to the decision whether to reinstate a sentence in confinement.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In this case, the Defendant admits on appeal that he violated the terms of his probation. This court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative

- 4 -

sentencing." State v. Dannie Brumfield, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). Four months after the Defendant was released from confinement, he committed further criminal offenses, including a violent domestic assault by strangulation. The trial court did not abuse its discretion by fully revoking probation due to the Defendant's failure to abide by the terms of his probationary sentence.

Relative to the trial court's consideration of the purposes and principles of sentencing, the State has correctly cited this court's previous discussion that "the principles of sentencing have no application in a probation violation proceeding." State v. Allison L. Brewington, No. M2003-00764-CCA-R3-CD, 2004 WL 794637, at *6 (Tenn. Crim. App. Apr. 14, 2004). Once the trial court found that the Defendant violated his probation and revoked it, it was "within the trial court's discretion as to whether the defendant's sentence [would] be ordered into execution. There is no requirement that the trial court consider 'the principles of sentencing' or . . . 'other options' in making that decision." State v. Garry Lee Nance, No. E2011-02646-CCA-R3-CD, 2012 WL 1670427, at *3 (Tenn. Crim. App. May 14, 2012). The Defendant is not entitled to relief on this basis.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE